UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ZOHAR NIV, individually and as
Personal Representative of the
Estate of Decedent TZILA NIV
and his minor children
Decedents GILAD NIV and LIOR
NIV, et al.,

       Plaintiffs,

 - against -

HILTON HOTELS CORPORATION and
HILTON INTERNATIONAL CO.,

       Defendants.

**OPINION AND ORDER**
06 Civ. 7839(PKL)

**Appearances**

NIXON PEABODY LLP
Robert Sentner
Tamar Y. Duvdevani
437 Madison Ave.
New York, NY 10022
**Attorneys for Plaintiffs**


KARDARAS & KELLEHER LLP
William P. Kardaras
Lori S. Kahn
Louise A. Kelleher
44 Wall Street – 16th Floor
New York, NY 10005

Greenberg Traurig, P.A.
Hilarie Bass
Mark A. Salky
1221 Brickell Ave.
Miami, FL 33131
**Attorneys for Defendants**

**LEISURE, <u>District Judge</u>:**

This action arises out of the tragic events that took place on October 7, 2004 at the Hilton Taba Hotel in Taba City, South Sinai, Egypt when a terrorist drove a vehicle with explosives into the lobby of the hotel, causing an explosion and the hotel's collapse.  Plaintiffs are 157 individuals who were guests, or whose decedents were guests, of the Hilton Taba Hotel on October 7, 2004.  Defendants Hilton International Co. and Hilton Hotels Corporation (collectively "Hilton" or "defendants"), now move this Court to dismiss the case pursuant to the doctrine of <u>forum non conveniens</u>.  For the following reasons, defendants' motion is GRANTED, subject to the conditions set forth below.

<u>**BACKGROUND**</u>

The Hilton Taba Hotel is located on the Sinai Peninsula in Egypt, near the Israeli border. (Compl. ¶ 2.)  Plaintiffs contend that the Hilton Taba Hotel is "a long-favored holiday destination" for Israelis and that the hotel markets to Israeli tourists. (<u>Id.</u> ¶¶ 18-20.)  During the fall of 2004, and in particular around the time of the Jewish holidays of Rosh Hashana, Yom Kippur, and Sukkot, Israeli intelligence issued public warnings of possible terrorist attacks in the Sinai. (<u>Id.</u> ¶¶ 22-25.)  Plaintiffs aver that despite the fact that an attack was "both likely and foreseeable" during the fall of

2004 (id. ¶ 25), Hilton Taba's security was below the standards required in the Sinai region during that time period. (See id. ¶¶ 27-29.)

Plaintiffs assert causes of action for negligence and wrongful death, alleging that Hilton failed to exercise reasonable care to protect guests where criminal activity was reasonably foreseeable, and that Hilton's actions caused plaintiffs to suffer bodily injury and severe emotional distress. (Id. ¶¶ 40-50.) Plaintiffs seek compensatory and punitive damages (id. ¶¶ 51, 55), and assert that Hilton Hotels Corporation is fully liable for the acts or omissions of Hilton International Co. pursuant to a theory of successor liability. (Id. ¶¶ 57-59.)

Defendants deny liability and ask the Court to dismiss the case based upon the theory of forum non conveniens. Specifically, defendants contend that because none of the plaintiffs are United States citizens or residents, and because the events in question, the witnesses, and the relevant documents are located in Egypt, the dispute should be heard in Egypt. (See Defs.' Mot. 24.) Plaintiffs oppose this motion, arguing that Egypt is not an adequate forum to hear this dispute because of the emotional burden plaintiffs would face if forced to return to Egypt, and that they would be unable to receive a

fair trial in Egypt in light of widespread anti-Semitism and anti-Israeli sentiments. (See Pls.' Opp'n 1-2.)

**DISCUSSION**

**I.    Forum Non Conveniens Dismissal Standard**

The doctrine of forum non conveniens is based on the principle that "'a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.'" Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947)); In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec., 1984, 634 F. Supp. 842, 845 (S.D.N.Y. 1986) (Keenan, J.) ("The doctrine of forum non conveniens allows a court to decline jurisdiction, even when jurisdiction is authorized by a general venue statute."), aff'd, 809 F.2d 195 (2d Cir. 1987).  Notwithstanding the propriety of the action under the venue statute, "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 (1981).  The Supreme Court has declined to fashion the exact circumstances that would "'justify or require either grant or denial of remedy.'" Id. (quoting Gilbert, 330 U.S. at 508).  Consequently, a district court's

inquiry is highly fact-specific. Id. ("'Each case turns on its facts.'"(quoting Williams v. Green Bay & W.R. Co., 326 U.S. 549, 557 (1946))); Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivanos, 712 F. Supp. 383, 392-93 (S.D.N.Y. 1989) (Leisure, J.) ("The Supreme Court has emphasized the flexibility with which the District Court must approach a forum non conveniens determination, and consequently there are no specific circumstances which would require either a grant or denial of the remedy.").

In exercising its discretion, the Court applies the three-step analysis outlined by the Second Circuit's decision in Iragorri v. United Technologies Corporation, 274 F.3d 65, 73-74 (2d Cir. 2001)(en banc):

> At step one, a court determines the
> degree of deference properly accorded
> the plaintiff's choice of forum. At
> step two, it considers whether the
> alternative forum proposed by the
> defendants is adequate to adjudicate
> the parties' dispute. Finally, at step
> three, a court balances the private and
> public interests implicated in the
> choice of forum.

Norex, 416 F.3d at 153 (internal citations omitted).[1]

---

[1] The parties dispute whether this Court is bound by the decisions of the Florida state courts that addressed the issue of forum non conveniens in another case arising out of the bombing at the Hilton Taba Hotel. In the Florida action, approximately eight plaintiffs, including United States citizens residing abroad, Israeli citizens, and a German citizen, sued Hilton. The trial court in Florida denied Hilton's motion for dismissal based upon forum non conveniens, and the Third District Court of Appeal in Florida reversed. The Court has reviewed both Florida courts' opinions, but those decisions do not preclude this Court from independently deciding the

5

**II. Application of <u>Forum Non Conveniens</u> Principles to the Parties' Arguments**

**A. Level of Deference to Plaintiffs' Choice of Forum**

In <u>Iragorri</u>, the Second Circuit sought to clarify the level of deference a district court should accord to a United States plaintiff's choice of forum when assessing a <u>forum non conveniens</u> motion. 274 F.3d at 68. In so doing, the Second Circuit resolved that the level of deference to any plaintiff's choice of forum moves on a "sliding scale" depending on several considerations. <u>Id.</u> at 71. The <u>Iragorri</u> Court explained that a plaintiff's choice of forum should receive greater deference where it appears that there is a <u>bona fide</u> connection between

_____

instant motion. Plaintiffs in this action are different from those who brought suit in Florida, including their citizenship and residency, which are factors the Court must consider in conducting the <u>forum non conveniens</u> analysis. Moreover, on appeal, the Florida appellate court noted that Florida courts do not take into account plaintiffs' emotional burden in deciding a <u>forum non conveniens</u> motion, a factor which the Second Circuit held to be relevant to the <u>forum non conveniens</u> inquiry in <u>Guidi v. Inter-Continental Hotels Corp.</u>, 224 F.3d 142, 147 (2d Cir. 2000). Because plaintiffs are different in the two cases, there are different facts that are relevant to the <u>forum non conveniens</u> analysis, and the law is applied differently, the Florida courts' decisions are not preclusive of this <u>forum non conveniens</u> motion. <u>See</u> <u>Kelly v. Interpublic Group of Cos., Inc.</u>, No. 07 Civ. 1317, 2007 U.S. Dist. LEXIS 58088, at *5 (Aug. 2, 2007) (holding that the location of defendant's principal place of business in New York is relevant to the <u>forum non conveniens</u> analysis and that because this fact was not present in the case proceeding in California, the motion was not precluded by the California decision); <u>Ibar Ltd. v. Am. Bureau of Shipping</u>, No. 97 Civ. 8592, 1998 U.S. Dist. LEXIS 7792, at *10 (May 22, 1998) (holding that <u>forum non conveniens</u> motion can be relitigated when there are objective facts that alter the previous considerations); <u>see also</u> Note, <u>Cross-Jurisdictional</u> Forum Non Conveniens, 121 Harv. L. Rev. 2178, 2185 (June, 2008) (identifying three considerations courts take into account when determining whether to treat another jurisdiction's <u>forum non conveniens</u> determination as preclusive, including: "(1) whether the 'material facts' relevant to the forum non conveniens inquiry are the same in both jurisdictions; (2) whether the 'objective criteria' governing the inquiry are the same in both jurisdictions; and (3) whether the forum non conveniens question involves the same formal issue in both jurisdictions." ) (quoted references omitted).

the plaintiff or the lawsuit and the forum, or that the plaintiff was sincerely concerned with convenience in choosing that forum, and less deference is warranted when it appears that the choice of forum was motivated by forum-shopping. Id. at 72. To assist the district courts with making this determination, the Second Circuit highlighted some factors a district court should consider. Specifically, factors that support a plaintiff's choice of forum include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence in the chosen forum, defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense. Id. Alternatively, factors that would decrease the level of deference include attempts to win a tactical advantage resulting from local laws, generosity of juries in the United States or in the forum district, the litigant's popularity, or their adversaries' unpopularity, in the district, or the inconvenience and expense of defending the suit in that jurisdiction. Id.

After considering all the factors outlined by the Second Circuit, this Court concludes that plaintiffs' choice of forum in this case is not entitled to substantial deference. Notably, none of the 157 plaintiffs are United States citizens or residents and none of the significant events occurred in this

jurisdiction. See, e.g., Wilson v. ImageSat Int'l N.V., No. 07
Civ. 6176, 2008 U.S. Dist. LEXIS 57897, at *12-*13 (S.D.N.Y.
July 22, 2008) (holding that plaintiffs' choice of an American
forum is "entitled to some, but minimal, deference" where only
half of plaintiffs were connected to the United States and the
relevant events took place abroad); Aguas Lenders Recovery
Group, LLC v. Suez S.A. Sociedad General De Aguas De Barcelona
S.A., No. 06 Civ. 7873, 2008 U.S. Dist. LEXIS 16283, at *18
(S.D.N.Y. Mar. 3, 2008) (according little deference to
plaintiff's decision because "the operative facts upon which the
litigation is brought bear little material connection to the
chosen forum." (citing Nieves v. Am. Airlines, 700 F. Supp. 769,
772 (S.D.N.Y. 1988) (Leisure, J.))).  There is no indication
that plaintiffs, who are Israeli and Russian citizens and
residents, have any connection to this district or to the United
States that would increase the deference accorded to plaintiffs'
choice of forum. See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d
88, 101 (2d Cir. 2000) ("While any plaintiff's selection of a
forum is entitled to deference, that deference increases as the
plaintiff's ties to the forum increase.").

The Court does not rely exclusively on plaintiffs'
citizenship in determining that less deference should be
accorded to plaintiffs' choice of forum. See Norex, 274 F.3d at
157 (reversing forum non conveniens dismissal where, instead of

applying the sliding scale of deference outlined in <u>Iragorri</u>,
the district court relied "almost exclusively on the presumption
that a foreign plaintiff's choice of a non-home forum is
inconvenient" in determining that plaintiff's choice of forum
was entitled to little deference).  Rather, after considering
the relevant factors identified in <u>Iragorri</u>, the Court finds
additional support for affording plaintiffs' forum selection
less deference in the fact that the evidence and witnesses are
not located in the United States, there is some indication that
plaintiffs engaged in forum shopping, and defendants are
amenable to service in both Egypt and Israel, not just in the
Southern District of New York.

The Second Circuit indicated that the availability of
witnesses or evidence in the chosen forum would weigh against
dismissal. <u>Iragorri</u>, 274 F.3d at 72.  Here, plaintiffs have not
specified any pertinent witnesses or evidence located in the
United States.  Much of the relevant information would likely be
found in Egypt or Israel where the bombing occurred and where
the medical treatment was administered. (<u>See</u> Armia Aff. ¶¶ 20-
21; Niv Decl. Exs. A,B,C.)  In order for plaintiffs to pursue
their cause of action in this forum, all 157 plaintiffs would
need to travel to testify during the trial, they would need to
collect and transport medical records, and they would need to
translate much of the evidence to English. Further, it is

questionable whether some of the relevant evidence would be accessible in this jurisdiction. (See Armia Aff. ¶ 8-11; El Ehwany Aff. ¶¶ 19-20; Afifi Decl. ¶ 6.) While the Court does not believe that all of the 144 documents cited in paragraph seven of Magdy Armia Samuel's affidavit would be necessary, or even relevant, to the current dispute, defendants have identified evidence that is likely to be important in this dispute, but which is unlikely to be available if the case proceeds in the Southern District of New York. (See Armia Aff. ¶ 9.) The Court similarly concludes that, while defendants might not actually need the testimony of some of the witnesses they have listed, Hilton has identified witnesses, such as the officials in the Egyptian Tourist Police Department (id. ¶¶ 14-15), who are unlikely to be able to testify in this forum, but whose testimony could be important to this case. At a minimum, the fact that likely evidence and witnesses are not located or easily available in this forum undermines any argument that this Court was chosen because of convenience to the parties.

In addition to the improbability that this forum was selected for its convenience, there is some indication that plaintiffs' choice of forum was motivated by forum shopping. The Hilton defendants assert that comments made by Moishe Zingel, plaintiffs' Israeli counsel, in a January 10, 2006 Globes article are indicative of plaintiffs' forum

shopping. (Defs.' Reply 4-5.)  In that article, Zingel

purportedly told the reporter that plaintiffs filed their claim

in New York because of "the awareness of the Americans to terror

activities since the Twin Tower disaster, and the fact that the

proceedings there will be conducted before a jury, which usually

awards higher amounts of compensation, including penalty

compensation." (Defs.' Reply Aff. Ex. AA.)  While this statement

is not dispositive of the deference this Court should give to

plaintiffs' choice of forum, it does indicate that the

generosity of juries in this district was a consideration for

plaintiffs in deciding to bring suit here. Such consideration is

indicative of forum shopping. See Iragorri, 274 F.3d at 72

(citing "the habitual generosity of juries in the United States

or in the forum district" as a factor indicative of forum-

shopping).[2]

In opposing Hilton's motion to dismiss, plaintiffs contend

that their choice of forum is entitled to substantial deference

because they had legitimate reasons for bringing suit in the

United States, including that (1) defendants are domiciled here,

(2) defendants are both registered to do business in New York

---

[2] Plaintiffs contend that by moving to dismiss this case, defendants, and not plaintiffs, are engaged in forum shopping. (Pls.' Opp'n 24-25.)  The Court recognizes that a defendant could use the forum non conveniens mechanism for improper forum-shopping reasons and the Court has therefore "armed [itself] with an appropriate degree of skepticism." (Pls.' Opp'n 25 (citing Iragorri, 274 F.3d at 75.))  Notwithstanding this concern, the Court finds that defendants have demonstrated "genuine inconveniences and a clear preferability of the foreign forum." (Id.)

and derive significant revenues in New York and around the United States, (3) Egypt is not an option for the Israeli and Jewish plaintiffs, (4) the Russian plaintiffs have no connection to Israel, and (5) the Israeli plaintiffs have no connection to Russia. (Pls.' Opp'n 6.)[3]

The Court recognizes that choosing to bring suit in a jurisdiction where defendants are established and amenable to suit is generally not indicative of forum shopping. <u>Iragorri</u>, 274 F.3d at 73. This fact by itself, however, does not justify according substantial deference to plaintiffs' choice of forum, where plaintiffs have no other ties to this jurisdiction and brought suit based on events with no connection to this forum. <u>See</u> <u>Gilstrap v. Radianz Ltd.</u>, 443 F. Supp. 2d 474, 480 (S.D.N.Y. 2006) ("[E]ven if New York were considered the 'home forum' of some of the defendants, 'a plaintiff's choice to initiate suit in the defendant's home forum . . . only merits heightened deference to the extent that the plaintiff and the case possess <u>bona fide</u> connections to, and convenience factors favor, that forum.") (internal citations omitted), <u>aff'd</u>, 2007 U.S. App. LEXIS 12308 (2d Cir. May 25, 2007). As the Second Circuit has

---

[3] The Court does not find plaintiffs' fourth and fifth reasons persuasive. The fact that the Israeli plaintiffs have no connection to Russia, and that the Russian plaintiffs have no connection to Israel, has little bearing on the appropriateness of the United States as the forum for this dispute. While some plaintiffs might have been inconvenienced if the suit was brought in Israel or in Russia, <u>all</u> plaintiffs are inconvenienced and have no connection with the United States or this forum.

explained, a plaintiff's choice of defendant's home forum is a much less reliable proxy for convenience than if a plaintiff chooses his own home forum. <u>Pollux Holding Ltd. v. Chase Manhattan Bank</u>, 329 F.3d 64, 74 (2d Cir. 2003). "Bearing in mind that litigants rarely are concerned with promoting their adversary's convenience at their own expense, a plaintiff's choice of the defendant's home forum over other fora where defendant is amenable to suit and to which the plaintiff and the circumstances of the case are much more closely connected suggests the possibility that plaintiff's choice was made for reasons of trial strategy." <u>Id.</u> Thus, the Second Circuit in <u>Pollux</u> concluded that plaintiffs' choice to bring suit in defendant's home forum, notwithstanding the fact that plaintiff and the case had only a faint connection to the United States, is not entitled to the same substantial deference afforded to plaintiffs' choosing their home forum. <u>Id.</u> The same conclusion is appropriate here, where plaintiffs and this suit have no connection to this forum.

In further opposition of Hilton's assertion that plaintiffs' choice of forum deserves little deference, plaintiffs, relying on <u>Bigio v. Coca-Cola Co</u>, 448 F.3d 176 (2d Cir. 2006), contend that Egypt is not an available forum for the Israeli or Jewish plaintiffs, and therefore, it was reasonable for plaintiffs to bring suit in the United States. (Pls.' Opp'n

8.)  The Second Circuit in <u>Bigio</u> held that "the district court

appears to have overlooked the legitimate and substantial

reasons for plaintiffs choosing to bring this suit in

defendants' own country, the United States, rather than in

Egypt, after plaintiffs' efforts to seek relief from the

Egyptian authorities proved abortive." 448 F.3d at 179.  The

<u>Bigio</u> decision was not based upon plaintiffs' religion, nor a

finding that Egypt is generally an inadequate forum for

plaintiffs.  Rather, the Second Circuit found that the district

court failed to appreciate plaintiffs' legitimate reasons for

bringing their action in the United States, namely plaintiffs'

previous failed attempt at resolving their dispute in Egypt.  In

this case, however, no such legitimate reasons exist.

Moreover, as discussed more fully below, plaintiffs are not

limited to bringing suit in Egypt, as Israel is also an

alternative forum for plaintiffs to pursue their claims.  Like

Egypt, Israel is a more appropriate forum than the United States

because many plaintiffs are citizens of Israel, many of the

injured received, and continue to receive, medical treatment in

Israel, and the majority of the evidence is either in Hebrew or

Arabic, which an Israeli court can review without the expense

and difficulties of translation. (<u>See</u> Sharon

Decl.¶ 20(b); Pls.' Opp'n 19, 21.)

Plaintiffs also contend that in determining the level of deference owed to plaintiffs' choice of forum, this Court should consider the emotional burden that plaintiffs would suffer if forced to litigate in Egypt. (Pls.' Opp'n 8-9.) In Guidi v. Inter-Continental Hotels Corp., the Second Circuit held that it was an error of law to not give any weight to the emotional burden faced by plaintiffs if the case were to be heard in Egypt. 224 F.3d 142, 147 (2d Cir. 2000). The Guidi Court found ample evidence of hostile attacks against foreigners in Egypt, and noted that the subsequent killing of nine foreign tourists by the same man who attacked plaintiffs gave credence to plaintiffs' fears and concerns about proceeding in Egypt. Id. This Court recognizes that, like in Guidi, plaintiffs are victims of a vicious attack that was probably motivated by religious extremism targeted at Jewish and Israeli tourists. Moreover, as in Guidi, plaintiffs have legitimate reasons for not wanting to return to Egypt, and this Court appreciates that the burden of pursuing their claim in Egypt could have impacted plaintiffs' decision to file their claims in this Court. Notably, however, in addition to the district court's failure to weigh plaintiffs' emotional burden in Guidi, the Second Circuit's reversal of the forum non conveniens dismissal was also premised upon the district court's failure to give adequate significance to plaintiffs' choice of forum as American

citizens. Guidi, 224 F.3d at 148.  This consideration is not applicable to the instant matter where no plaintiffs are United States citizens.

Notwithstanding this Court's recognition that there could be legitimate reasons for bringing the suit in this forum, and that there are emotional burdens associated with bringing the suit in Egypt, plaintiffs' choice of forum does not require the "considerable" deference plaintiffs seek. (Pls.' Opp'n 6.) Instead, the Court finds that plaintiffs' lack of any connection to this forum, that no evidence or witnesses can be identified within this forum, that New York is not the only forum where plaintiffs can sue both defendants, and that there is an indication that plaintiffs engaged in forum shopping, moves plaintiffs' choice of forum down the sliding scale of deference. See Iragorri, 274 F.3d at 71.  This, however, does not mean that plaintiffs' choice of forum is ignored. See R. Maganlal & Co. v. M.G. Chem. Co. Inc., 942 F.2d 164, 168 (2d Cir. 1991)(explaining that giving plaintiff's choice of forum less weight when the plaintiff is foreign "is not an invitation to accord a foreign plaintiff's selection of an American forum no deference since dismissal for forum non conveniens is the exception rather than the rule.") (internal citations omitted); Metito (Overseas) Ltd., v. Gen. Elec. Co., No. 05 Civ. 9478, 2006 U.S. Dist. LEXIS 81683, at *8 (S.D.N.Y. Nov. 7, 2006) (Lynch, J.) ("Even

assuming, as defendant argues, that plaintiff was motivated in part by forum shopping – which is dubious – that would not mean that plaintiff's forum choice is entitled to 'no' deference, but rather to 'less' deference.") (internal citations omitted).  As the Second Circuit made clear in Iragorri, "a lesser degree of deference to the plaintiff's choice bolsters the defendant's case but does not guarantee dismissal." Iragorri, 274 F.3d at 74.  As such, the Court will continue its forum non conveniens analysis by ascertaining the adequacy of an alternative forum for this dispute, and by balancing the private and public factors that relate to the appropriateness of hearing this case in this forum.

### B.    Adequate Alternative Forum

A complaint is not properly dismissed under the doctrine of forum non conveniens unless a suitable alternate forum for the dispute exists. See Norex, 416 F.3d at 159 ("We here clarify that a case cannot be dismissed on grounds of forum non conveniens unless there is presently available to the plaintiff an alternative forum that will permit it to litigate the subject matter of its dispute."); see also Cortec Corp. v. Erste Bank Ber Oesterreichischen Sparkassen AG (Erste Bank), 535 F. Supp. 2d 403, 409 (S.D.N.Y. 2008) (discussing need for a presently available alternative forum prior to dismissal on grounds of forum non conveniens). The movant has the burden to prove that

there is an adequate forum elsewhere, but the standard imposed on defendants to establish such adequacy is not heavy. Mastafa v. Austl. Wheat Bd. Ltd., aka AWB Ltd., No. 07 Civ. 7955, 2008 U.S. Dist. LEXIS 78305, at *22 (S.D.N.Y. Sept. 25, 2008) ("The requirements for establishing that a forum is adequate are not strenuous."). It is well established that an alternative forum is generally adequate if the defendants are subject to service of process in the other forum and the forum permits litigation of the subject matter of the dispute. See, e.g., Cortec Corp., 535 F. Supp. 2d at 409; Aguas Lenders, 2008 U.S. Dist. LEXIS 16283, at *14; BFI Group Divino Corp. v. JSC Russian Aluminum d/b/a RUSAL, 481 F. Supp. 2d 274 (S.D.N.Y. 2007). In "rare circumstances," however, if the remedy available in the alternative forum is clearly unsatisfactory, the other forum may not be an adequate alternative. Cortec Corp., 535 F. Supp. 2d at 409 (citing Aguinda v. Texaco, Inc., 303 F.3d 470, 476-77 (2d Cir. 2002)).

Hilton contends that Egypt is an adequate, and more appropriate, forum to resolve this dispute. Defendants have provided evidence that satisfies both elements of the adequate alternative inquiry. First, defendants submitted stipulations asserting that they are amenable to service in Egypt. (Defs.' Aff. Exs. E, F.) Cf. Jota v. Texaco Inc., 157 F.3d 153, 159 (2d Cir. 1998) ("Accordingly, dismissal for forum non conveniens is

not appropriate, at least absent a commitment, by [defendant] to submit to the jurisdiction of the Ecuadoran courts for purposes of this action."); <u>In re Union Carbide Corp. Gas Plant Disaster</u>, 809 F.2d at 203-04 (noting that condition that defendant be subject to jurisdiction in India was not unusual and had been imposed in numerous cases).  Second, defendants provided the affidavit of Hossam El-Din Kamel El Ehwany, explaining that the negligence causes of action asserted in this suit are recognized in Egypt. (El Ehwany Aff. ¶ 11.)  Plaintiffs do not contest either of these points.

Rather, the main contention between the parties as to Egypt's adequacy as an alternative forum for this dispute is the ability of the Israeli and Jewish plaintiffs to receive a fair, safe trial in Egypt.  In particular, plaintiffs focus on the "pervasive and virulent anti-Semitism and anti-Israeli bias that permeates Egypt, which prevents Plaintiffs from obtaining a fair trial there." (Pls.' Opp'n 10.)  In support of their position, plaintiffs cite government advisories for Israelis traveling to Egypt, articles and reports illustrating anti-Semitism in Egypt, the Egyptian Bar Association's anti-Israeli activities, and comments by members of the Egyptian judiciary that are suggestive of anti-Israeli and anti-Semitic beliefs. (Pls.' Opp'n 9-14; Sentner's Decl. Exs. F, G; Mazel Decl. Exs. B, G, J, M, N.)

Hilton, on the other hand, contends that plaintiffs' fears are unfounded because Israeli and American tourists have traveled extensively to Egypt since the October 7, 2004 bombing, and because plaintiffs could pursue their case without ever traveling to Egypt. (Defs.' Mot. 6.) The Court finds these arguments unpersuasive. The contention that plaintiffs could pursue this case in Egypt because tourists, who were not victims of this bombing, have visited the country, does not respond to plaintiffs' arguments that, as victims of these acts, plaintiffs would face a significant emotional burden if forced to bring suit in Egypt. Moreover, plaintiffs disagree with Hilton's contention that plaintiffs could litigate this case with documents, non-party witnesses, and their initial pleadings, which would be used to express plaintiffs' facts, claims, feelings, impressions, and observations, without plaintiffs testifying at trial. (Pls.' Opp'n 15; Defs.' Mot. 8; Armia Decl. ¶ 26.) The Court will not accept Hilton's argument that plaintiffs could preserve their safety and avoid the emotional difficulties of litigating in Egypt by foregoing their right to participate in the trial.

Notwithstanding the Court's rejection of Hilton's arguments described above, the Court is unable to find Egypt to be an inadequate forum for these claims. While the Court does not believe that the extensive number of articles and reports cited

in plaintiffs' papers detailing anti-Semitic and anti-Israeli sentiments can be dismissed as "unsubstantiated and wholly insufficient" (Defs.' Reply 8), the Court cannot assume that Egyptian courts are unable to ignore the biases that might exist in the country, and even in the legal profession. Moreover, plaintiffs have not pointed to any hostility targeted at this litigation or individuals connected with this case. Plaintiffs' arguments rest entirely on general biases and dangers within Egypt. See BFI Group, 481 F. Supp. 2d at 284; see also BFI Group Divino Corp. v. JSC Russian Aluminum d/b/a RUSAL, 247 F.R.D. 427, 432 (S.D.N.Y. 2007) (denying motion to reconsider forum non conveniens dismissal because travel advisory warnings and reports of violence are insufficient to alter determination that Nigeria is an adequate alternative forum).

Courts must be cautious before finding incompetence or corruption by other nation's judicial systems. See Monegasque De Reassurances S.A.M. (Mode RE) v. Nak Naftogaz of Ukraine, 311 F.3d 488, 499 (2d Cir. 2002) (noting the Second Circuit's reluctance to find foreign courts corrupt or biased).

As Judge Height observed:

> [P]laintiff's preference for an
> American court cannot be indulged on
> the basis of an American judge's
> speculation that his [Egyptian]
> colleagues would violate their oaths of
> office. . . .It will be a black day for
> comity among sovereign nations when a
> court of one country, because of a
> perceived "negative predisposition,"
> declares the incompetence or worse of
> another nation's judicial system.

Flores v. S. Peru Copper Corp., 253 F. Supp. 2d 510, 539

(S.D.N.Y. 2002); see also BFI Group, 481 F. Supp. 2d at 282-83

(quoting Judge Height's discussion and finding that Nigeria is

an adequate forum despite plaintiff's assertions that the

Nigerian courts would not fairly adjudicate the case and that

their witnesses would be at risk of physical harm if the case

were tried in Nigeria); Cortec Corp., 535 F. Supp. 2d at 411

(quoting Judge Height's discussion and finding Croatia to be an

adequate alternative forum despite news reports and government

statements suggesting political corruption in the Croatian

judiciary).  Accordingly, the Court will refrain from finding

Egypt to be an inadequate forum based upon the perception that

Egyptian courts are too biased or corrupt to provide Jewish or

Israeli plaintiffs with a fair trial.

If plaintiffs are reluctant to bring suit in Egypt, they

can initiate this action in Israel, which is also an adequate

alternative forum for this dispute.[4] Defendants are amenable to

service in Israel and have presented evidence that Israel

recognizes the types of claims raised in the instant action.

(Sharon Decl. ¶ 22; Defs.' Reply Aff. Exs. EE, FF.)  As such,

Israel is another forum in which this action can proceed.

To ensure that an adequate alternative forum actually

exists, the Court will condition its dismissal upon the

effective initiation of a lawsuit in either Egypt or Israel

within sixty (60) days from this Opinion and Order.  Plaintiffs

contend that defendants' offer to waive statute of limitations

is futile because there is no guarantee that statute of

limitations could effectively be waived, or that any other

defendants brought into the case would similarly waive that

argument. (Pls.' Opp'n 17-18 n.7.)  Notwithstanding these

---

[4] By letter dated August 21, 2007, plaintiffs asked the Court to disregard
defendants' arguments that Israel could also be an adequate alternative forum
for plaintiffs to bring this action because defendants raised this argument
for the first time in its reply papers.  The Court does not believe that
ignoring these arguments is necessary.  First, since the focus of plaintiffs'
opposition papers was the inadequacy of Egypt because of the anti-Semitism
and anti-Israel sentiment in Egypt, and because much of the Hilton's initial
argument was that New York was not an appropriate forum to hear this dispute,
the existence of Israel as an alternative forum was not a new argument, but
rather an extension of the arguments made in the initial papers. See Toure v.
Cent. Parking Syst., No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *4
(S.D.N.Y. Sept. 28, 2007) (denying motion to strike materials on reply where
the materials "do not raise new arguments, but rather respond to issues
raised in opposition or amplify points already made on the initial motion").
Second, even if considered a new argument, the Court believes that it was
reasonable to expect this argument and therefore it is not prejudicial to
plaintiffs to consider those materials. See Booking v. Gen. Star Mgmt Co.,
254 F.3d 414, 418 (2d Cir. 2001) ("[W]e doubt that district courts lack all
discretion to  consider arguments raised for the first time in reply briefs .
. . ").  Finally, in the interest of justice, the Court considers the
arguments as to the adequacy of Israel in connection with the arguments in
favor of Egypt, finding that both fora are more appropriate and convenient
locations for this suit to be litigated.

contentions, for all the reasons described above, there is a justifiable belief that both Egypt and Israel are alternative fora for this dispute. Thus, the Court will dismiss the case conditioned upon a foreign court's willingness to hear the case, and upon all defendants effectively waiving any jurisdictional defenses or any defenses based upon statute of limitations that may have arisen since the filing of the case in the present forum. See Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp., 421 F. Supp. 2d 741, 756 (S.D.N.Y. 2006) (Leisure, J.) (discussing Court's ability to condition dismissal to ensure adequacy of alternative forum if the Court asserts its "justifiable belief" in the existence of adequate alternative forum).

C.    **Balancing the Private and Public Interest Factors**

The third step in this analysis is to weigh two sets of factors to determine whether adjudication is more appropriate in the present forum or in an alternative forum. The first set of factors concerns the private interest factors, or the convenience of the litigants. Iragorri, 274 F.3d at 73. The second set of factors the Court must consider are the public interest factors of justice and court efficiency. See id. at 74.

"Because much of the [forum non conveniens] doctrine's strength derives from its flexibility and each case turns on its

24

own facts, a single factor is rarely dispositive." DiRienzo v.
Philip Servs. Corp., 294 F.3d 21, 29 (2d Cir. 2002).

**1. Private Interest Factors**

The private interest factors address the convenience to the
litigants.  These factors include

> "the relative ease of access to sources of proof;
> availability of compulsory process for attendance of
> unwilling, and the cost of obtaining attendance of
> willing, witnesses; possibility of view of premises,
> if view would be appropriate to the action; and all
> other practical problems that make trial of a case
> easy, expeditious and inexpensive."

Iragorri, 274 F.3d at 73-74 (quoting Gilbert, 330 U.S. at 508).
In considering these private factors, the Court is "necessarily
engaged in a comparison between the hardships defendant[s] would
suffer through the retention of jurisdiction and the hardships
the plaintiff[s] would suffer as the result of dismissal and the
obligation to bring suit in another country." Id. at 74.

**a. Ease of Access to Evidence**

Hilton argues that the overwhelming majority of evidence –
both witnesses and documentation – is in Egypt.  In particular,
defendants assert that the Southern District of New York does
not provide adequate access to the evidence needed in this case
because significant documents are located in Egypt, including:
(1) reports of Egyptian authorities who investigated the
bombing; (2) reports of the Egyptian government prepared
subsequent to the bombing; (3) documents relating to the

standard of care for security in Egyptian hotels; (4)
transcripts of the criminal trial in Egypt that were recorded in
Arabic; (5) the majority of plaintiffs' medical records which
are written in either Arabic or Hebrew; and (6) records of the
Tourist Police who were involved in security planning for the
Hilton Taba Hotel. (Defs.' Mot. 12.)  Similarly, Hilton contends
that it would be difficult or impossible to obtain testimony
from many of the important witnesses, none of whom reside in New
York, including the Egyptian officials who investigated the
bombing, the criminal defendants prosecuted in Egypt, the local
police officer(s) involved in planning hotel security, the
former General Manager of the Hilton Taba Hotel, and the
physicians who examined certain victims after the bombing.
(Defs.' Mot. 13.)

In weighing the ease of access to evidence, the Court
focuses on the specific evidence relevant to the "precise issues
that are likely to be actually tried."  Iragorri, 274 F.3d at
74.  As described above, the essence of plaintiffs' claims is
that the Hilton knew, or should have known, of the dangers to
those staying at the Hilton Taba Hotel and that defendants
failed to provide the level of security that would reasonably be
expected under the circumstances. (See Compl. ¶¶ 40-50.)
Plaintiffs contend that in light of their claims, the vast
majority of evidence defendants identified are irrelevant.

(Pls.' Opp'n 19-20.)  The Court agrees with plaintiffs that at least some of the significant number of police and investigation reports that defendants cite as relevant, but only available in Egypt, are unlikely to be valuable for the issues in this litigation.  Many of these reports are likely to be inadmissible hearsay and many more do not appear to have any bearing on Hilton's knowledge, actions, or the reasonableness of those actions.  For example, many of the investigation and inspection reports which describe the area after the bombing (see, e.g., Armia Aff. ¶ 7, docs. 43-44, 51, 76, 96), DNA testing and other forensic analysis related to the accused bombers (id., docs. 50, 108), the investigation and interrogation reports of witnesses and those accused of the bombing, (id., docs. 120-31), and technical reports from the Fire and Explosive Department of Criminal Laboratory (id., docs. 11-12, 109, 114), were necessary to attribute criminal liability for the attack, and would likely have little to do with Hilton's potential liability.

Notwithstanding that defendants seem to have overstated the amount of evidence likely to be used at trial, Hilton has demonstrated that the majority of evidence that would be necessary for this case is more readily accessible in Egypt or Israel than it is in the United States.  Statements by the managers and security guards at the Taba Hilton (see, e.g., Armia Aff. ¶ 7, docs. 32-35, 37, 40-41), and hospital records of

injured victims or decedents' from various Egyptian hospitals (id., docs. 65-74), will likely be significant in determining Hilton's potential liability. Moreover, to the extent the Egyptian Tourist Police Department as part of the Ministry of Internal Affairs directed or oversaw Hilton's security decisions (see Armia Aff. ¶ 6), and that these agencies have documents relevant to the standards of care required of hotels (see id. at ¶ 9), that evidence would also be important to this suit.[5] Additionally, there are extensive medical records in Israel, dating from immediately after the attack to the months and years since, which would be central to resolving the issues in this case. (See, e.g., Niv. Decl. ¶¶ 4, 6-7.)

The witnesses whose testimony will likely be important to this trial are also located in Egypt or Israel, but not in the United States. As with the documents, defendants appear to have overstated the number of likely witnesses they would call from Egypt. For example, defendants listed 43 Egyptian officials who investigated the bombing, and 15 criminal defendants prosecuted for the bombing, as possible witnesses in the trial. (Armia Aff. ¶¶ 12, 13.) It does not seem plausible to this Court that Hilton would call upon these witnesses to establish what

---

[5] Plaintiffs assert that "there exists a credible argument that the negligent security planning for the Taba Hilton was conducted in the United States." (Pls.' Opp'n 23.) Plaintiffs, however, appear to be speculating as to the existence of this evidence in the United States. Further, even if such evidence exists, defendants have established the existence of significant relevant evidence in Egypt.

security was in place before the bombing, and what, if anything, Hilton should have done to prevent the attack. It does, however, seem reasonable that Hilton would call upon officers of the Egyptian Tourist Police, including Officer Tarek Kamel who was responsible for security in the Village of Taba and who resided at the Hilton Taba Hotel at the time of the attack. (See id. ¶¶ 15-16.) It also seems reasonable that defendants would seek testimony from other Hilton Taba Hotel employees and the hotel's former General Manager, Hassan Kheir El Deen Ragab. (See id. ¶¶ 17-18.) All of the aforementioned potential witnesses reside in Egypt. Furthermore, it is clear that plaintiffs will need to testify. The majority of plaintiffs are citizens and residents of Israel, and none reside in New York.

Plaintiffs contend that "[t]he critical witnesses to this action are Plaintiffs, over 99% of whom are not in Egypt, Plaintiff's doctors, none of whom are in Egypt, and Hilton personnel, who may or may not be in Egypt but are not prevented from traveling to the United States." (Pls.' Opp'n 20.) The majority of plaintiffs, and presumably their doctors, are in Israel. (See Compl. Ex. A.) Notably, none of these "critical" witnesses are located in the United States, which supports dismissing this action in favor of a foreign court. See Aguas Lenders, 2008 U.S. Dist. LEXIS 16283, at *21-*22 (plaintiff's

failure to identify any documents or witnesses located in the United States weighs in favor of an Argentine forum).

Because the vast majority of necessary witnesses and documentary evidence are most easily, if not exclusively, accessible in Egypt and Israel, this factor weighs in favor of dismissal.  See Wilson, 2008 U.S. Dist. LEXIS 57897, at *21-*22 (holding that trial of the case in Israel would be easier, expeditious, and less expensive because "most, if not all of the documentary evidence is in Israel, and many of the witnesses who are critical to the proof of [the significant issues in this case] reside there"); Gilstrap, 443 F. Supp. 2d at 488-89 (finding relevant private interest factors weigh in favor of dismissal where key witnesses and the majority of relevant documentary evidence are in England); Strategic Value, 421 F. Supp. 2d at 766 ("Where most of the witnesses and documentary evidence reside in a foreign country, conducting trial in the U.S. could impose such significant burdens on the parties that dismissal is favored.").

### b. Availability of Compulsory Process for Attendance of Unwilling Witnesses and the Cost of Obtaining Attendance of Willing Witnesses

Because the Court has determined that the vast majority of relevant evidence resides in Egypt and Israel, the Court must decide whether the costs defendants will incur in procuring such evidence for a trial in this forum are great enough to weigh in

favor of dismissal. To assess this factor, the Court must compare the costs defendants would sustain if the case continues in this forum, with the costs plaintiffs would incur in the foreign forum. On balance, the costs associated with litigating this case in this forum are significantly more burdensome on both plaintiffs and defendants than if plaintiffs were to bring this case in a foreign court, namely, either Egypt or Israel.

Hilton contends that certain relevant documentary evidence and testimony is only available after an Egyptian court compels production of the evidence and testimony. (See Armia Aff. ¶¶ 8, 9, 32.) They further assert that it is unlikely that an Egyptian would issue an order compelling the production of those documents or testimony to be used in this Court. (Id.) Moreover, defendants assert that their ability to obtain this evidence would be further inhibited because Egypt is not a signatory to the Convention on Taking Evidence Abroad in Civil or Commercial Matters. (See id. ¶ 11.) In assessing the availability of a compulsory process to obtain evidence, the Court considers the ability to use letters rogatory to get the foreign evidence. See DiRienzo, 294 F.3d at 30 ("Despite the preference for live testimony, we have recognized the availability of letters rogatory as relevant in deciding whether plaintiffs' chosen forum is inconvenient."). Hilton contends that Egyptian courts will not honor requests of a foreign court

to compel the production of documents or testimony of witnesses in this type of situation. (See El Ehwany Aff. ¶¶ 19-20.) Cf. In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig., 228 F. Supp. 2d 348, 362 (S.D.N.Y. 2002) (finding an adequate means to compel documents and witness testimony from countries who are non-signatories to the Convention of the Taking of Evidence Abroad where defendants' foreign law experts indicated that requests for information are generally honored). Thus, this factor weighs in favor of dismissal because relevant non-party witnesses, such as the Egyptian officials who were involved with security in Taba, could not be compelled by this Court (Armia Aff. ¶¶ 31-32), and there are no assurances that an Egyptian court would honor requests by letters rogatory. See Pollux, 329 F.3d at 75 (affirming district court's determination that lack of availability of compulsory process weighed heavily in favor of dismissal where defendant "identified several key witnesses whose testimony can be compelled only in England while plaintiffs have not demonstrated that any material witnesses would be unavailable there"); Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC, 155 F.3d 603, 611-12 (2d Cir. 1998) (finding England a more efficient and effective forum where crucial witnesses were not subject to compulsory process in the U.S. but were subject to compulsory process in England); Fitzgerald v. Texaco, Inc., 521 F.2d 448, 451-52 (2d Cir. 1975)

(holding England to be a more appropriate forum because its courts could compel non-party witnesses' appearances, while the Southern District of New York lacked such power).

Even if the prospective witnesses are in Hilton's control, and therefore could be produced for trial in this Court, the Court must still weigh the costs of producing these witnesses. See Gilstrap, 443 F. Supp. 2d at 488; Strategic Value, 421 F. Supp. 2d at 766. A significant consideration applicable to the defendants' costs in producing their foreign witnesses is translation. The majority of Hilton witnesses who would testify as to defendants' knowledge of a potential attack at the Hilton Taba Hotel, and the security measures that were implemented in light of those risks, are likely to be Egyptian residents who speak Arabic. Moreover, any medical records from Egyptian hospitals, or testimony from Egyptian doctors who treated plaintiffs or their loved ones, would also need translation. Defendants' translation costs would be greatly reduced if the case were to proceed in Egypt or Israel, since both fora are capable of interpreting Arabic. (See Sharon Decl ¶ 20(b).) The costs associated with translating the vast majority of testimony weigh in favor of dismissal. See LaSala v. Lloyds TSB Bank, PLC, 514 F. Supp. 2d 447, 461 (S.D.N.Y. 2007) (discussing the problems of obtaining testimony through an interpreter,

including the expenses and the difficulties of assessing witness credibility).

Notably, the translation costs if this case were to proceed in this forum are not limited to defendants, as plaintiffs would also need translators for their testimony and for their medical records. If, on the other hand, plaintiffs were to pursue their case in Egypt, the costs to translate plaintiffs' testimony and medical records to Arabic would be equivalent to the costs of translating that evidence into English. Alternatively, if they choose to bring suit in Israel, the translation costs would be greatly reduced since many plaintiffs' testimony and medical records would already be in Hebrew.

In evaluating the costs associated with litigating a case in this forum when the documentary evidence exists in a foreign country, the Court acknowledges that "in the era of electronic discovery, this factor carries less weight than in the day of [Gilbert]." Gilstrap, 443 F. Supp. 2d at 488; see also DiRienzo, 294 F.3d at 30 (discussing how the cost of transporting documentary evidence is now entitled to less weight absent an explanation why it would be burdensome). The Court, however, finds that when the majority of relevant evidence is located abroad, the burden imposed on the parties is still significant and favors dismissal. See Gilstrap, 443 F. Supp. 2d at 488. Moreover, the Court finds that the costs of translating almost

all of the relevant documentary evidence further supports dismissal. See Cortec Corp., 535 F. Supp. 2d at 412 (explaining that the court's analysis "must include the private cost of providing certified translations of hundreds of pages of documentary evidence").

The Court notes that there is no perfect forum to hear this dispute. If plaintiffs were to bring suit in Egypt, all but one plaintiff would need to travel to Egypt, provided plaintiffs want to exercise their right to testify at trial. In addition, their testimony would need to be translated into Arabic, which plaintiffs do not speak. Furthermore, most of plaintiffs' medical records would need to be translated into Arabic to be used in an Egyptian trial. (Pls.' Opp'n 21.) Alternatively, if the suit is brought in Israel, much of the evidence regarding the security at the Hilton Taba Hotel would need to be transported from Egypt and some of that evidence might not be accessible. (See Armia Aff. ¶¶ 31-32.) Despite the imperfections of both Egypt and Israel as an alternative forum to hear this dispute, there would be a combination of those problems if the case were litigated in this Court. The costs associated with transporting and translating the majority of relevant evidence and testimony to the Southern District of New York, and the limitations to access some of this information, weigh strongly in favor of dismissal.

**c.   Possibility to View the Premises**

The Hilton asserts that an Egyptian court would be in a better position to direct and supervise a viewing of the Hilton Taba Hotel. (Defs.' Mot. 15.)  Defendants further argue that they would be severely prejudiced in their ability to defend the allegations if the Court could not view the hotel. (Id. 17.) This argument carries little weight since the hotel has been rebuilt since the explosion. Cf. Union Carbide, 809 F.2d at 201 (discussing value of having case heard in India where the court could direct and supervise a viewing of the plant, which was sealed after the accident and therefore could help the court determine liability issues).

**d.   Other Considerations**

Hilton contends that if the case were to proceed in New York, the inability to join certain individuals, such as the perpetrators of the bombing, the Ministry of Internal Affairs, and the Egyptian Tourist Police, weighs in favor of dismissal. (Defs.' Mot. 15.)  Hilton argues that the inability to join the third-party defendants who were responsible for security at the time of the involved terrorist bombing is extremely prejudicial and harmful to defendants' case. (Defs.' Mot. 16.)  Plaintiffs, however, contend that the Management Agreement between Hilton

and the Egyptian entity that managed the Hilton Taba provides
that disputes will be resolved in arbitration, which makes it
unlikely, or even impossible, to join that entity as a party to
the lawsuit in an Egyptian court. (Pls.' Opp'n 19 n.8; Sentner
Decl. Ex. J.)  Plaintiffs further argue that Hilton's
contentions were not made in good faith because in the years
after the attack, Hilton did not bring suit against any of those
entities, and many of the terrorists are in prison awaiting
execution. (Pls.' Opp'n 13 n.4.)

Courts have held that the inability to join other parties to
an action in this forum, when those entities could be joined in
another jurisdiction, weighs in favor of dismissal. See Piper
Aircraft, 454 U.S. at 259 ("The District Court correctly
concluded that the problems posed by the inability to implead
potential third-party defendants clearly supported holding the
trial in Scotland."); Gilbert, 330 U.S. at 511 ("Certainly to
fix the place of trial at a point where litigants cannot compel
personal attendance and may be forced to try their cases on
deposition, is to create a condition not satisfactory to court,
jury or most litigants."); Fitzgerald v. Texaco, Inc., 521 F.2d
448, 453 (2d Cir. 1975) ("The inability to implead other parties
directly involved in the controversy is a factor which weighs
against the retention of jurisdiction in the Southern District
of New York.").  Defendants, however, have consented to

jurisdiction in Israel (Reply Aff. Exs. EE, FF), where they are also unlikely to be able join some of these Egyptian defendants. Because the Hilton has conceded that plaintiffs could choose to initiate this action in Israel, and because of the existence of the arbitration clause in the Management Agreement, it is questionable how important, or realistic, defendants believe it is to join these Egyptian entities to the lawsuit. The Court finds these considerations do not weigh in favor of either party.

In sum, the private interest factors overwhelmingly favor dismissal. Plaintiffs and defendants would face significant difficulties and costs in obtaining the necessary evidence and testimony in this forum; it is likely that both parties would incur far fewer costs if the suit was brought in either Egypt or Israel.

## 2. Public Interest Factors

The Court now turns to those considerations of the forum non conveniens inquiry that protect the public's interest. These factors include: (1) the consideration that jurors should not be obligated to decide disputes with no relation to their community; (2) the fact that where a case affects many people, a forum that allows those affected to view the suit, rather than learn of it by report from a foreign forum, is preferable; (3) the forum's local interest in having its own controversies

decided at home; and (4) the potential pitfalls that stem from a diversity case being heard in a foreign forum that must resolve conflicts of law and substantive law problems, rather than a forum familiar with the state law to be applied to the case.[6] Gilbert, 330 U.S. at 508-09; Iragorri, 274 F.3d at 74.

In asserting that the public factors weigh against dismissal, plaintiffs assert that this dispute cannot be considered "an Egyptian controversy." (Pls.' Opp'n 22.) They argue that because defendants are United States corporations, this forum has an interest in Hilton's security policies and procedures. (Id.) Plaintiffs further contend that the United States has an interest in the way that large U.S. corporations act, especially when those actions are widespread and their impact could be felt abroad. (Id. 22-23.)

These interests, while legitimate, pale in comparison to the interests of Egypt and Israel in this dispute. Egypt has a significant interest in adjudicating claims that arise out of terrorist attacks on her soil. This is particularly true when those attacks were targeted at tourists, whose safety and security is entrusted to the Egyptian Tourist Police Department

---

[6] Gilbert also specifies administrative difficulties resulting from court congestion as a public factor consideration. Gilbert, 330 U.S. at 508-09. This consideration is not presently applicable in this District, however. Cf. Guidi, 224 F.3d at 147 (noting that "the recent filling of all judicial vacancies and the resulting full complement of judges for the District makes this concern of little or no present significance").

as part of the Ministry of Internal Affairs. (See Armia Aff. ¶ 6.)  Even if some portion of the security plans were developed in New York, a proposition that plaintiffs assert but provide no evidence to support, the vast majority of the security determinations appear to have been made in Egypt.  Similarly, Israel has a substantial connection to the dispute since the majority of plaintiffs are Israeli citizens and residents. Moreover, the Hilton Taba Hotel, and other hotels in the Taba region of Egypt, market to Israeli tourists. (Compl. ¶¶ 18-20.) Israel has a significant interest in providing a forum to resolve controversies that arise out of attacks on its citizens, especially when the allegations are based upon defendants' inability to properly respond to specific terrorist threats made against those citizens.  Given the limited connection of this dispute to the United States, and the more substantial interests that Egypt and Israel would have in deciding this controversy, the first three public interest factors weigh heavily in favor of dismissal.

The first factor – the appropriateness of having jurors resolve disputes that are not related to their community – favors dismissal.  In this case, foreign plaintiffs with no connection to this forum bring an action for their injuries and the deaths of their loved ones after a terrorist attack in Egypt.  Despite the fact that Hilton owns properties and

generates revenue in this forum, those activities have no apparent connection to this suit.  Moreover, the security provided in Egypt was at least partially regulated by Egyptian government entities. (Armia Aff. ¶¶ 6, 31.)  As such, a New York jury has little interest in adjudicating this dispute. See BFI Group, 481 F. Supp. 2d at 287 (holding that the burden on jurors militates in favor of dismissal where "[t]he action essentially amounts to a dispute between California and Russian companies over their interactions with the Nigerian government concerning the purchase of Nigerian government property."); Blackrock Inc. v. Schroders PLC, No. 07 Civ. 3183, 2007 U.S. Dist. LEXIS 39279, at *31 (S.D.N.Y. May 30, 2007) (Leisure. J.) ("New York jurors have no connection to this German dispute and should not be burdened with the duty of finding the facts of this case.").

Similarly, any non-parties who might be affected by this suit and who would want the opportunity to observe the proceedings – the second of the public interest factors - are either in Egypt, Israel, or Russia, but not in New York. See Blackrock, 2007 U.S. Dist. LEXIS 39279, at *31 (finding support for forum non conveniens dismissal when "to the extent this case touches on the affairs of other people, those people are in Germany, not New York.").

The third public interest factor, namely the forum's local interest in having its own controversies decided at home, also

supports dismissing this case because of the strong connection

of this suit to both Egypt and Israel.  While the United States

has an interest in the actions of corporations created under its

laws, this interest is much less significant than a country's

interest in adjudicating the cases that directly impact that

country's citizens. See Pollux, 329 F.3d at 76 (affirming lower

court's determination that New York's interest in overseeing a

bank, which is headquartered in New York, is not a "strong local

interest" compared to England's interest where plaintiffs

purchased the investments at issue in England, the alleged fraud

and misrepresentations occurred in England, and the breach of

contract and fiduciary duty allegations arise out of contracts

entered in England); Aguinda v. Texaco, Inc., 142 F. Supp. 2d

534, 551 (S.D.N.Y. 2001) (holding that the United States'

interest in ensuring that its companies do not participate in

misconduct abroad was a much more modest interest than Ecuador's

local interest in a controversy that allegedly injured thousands

of Ecuadorian and Peruvian citizens and that implicated the

Ecuadorian government), aff'd, 303 F.3d 470, 476-77 (2d Cir.

2002).

    The fourth factor requires the Court to consider the

problems of applying foreign law to the dispute.  While the

Court must consider the question, it is not required to decide

the issue of conflict of law for the purpose of this decision.

See Piper Aircraft, 454 U.S. at 251 ("The doctrine of forum non conveniens . . . . is designed in part to help courts avoid conducting complex exercises in comparative law"); LaSala, 514 F. Supp. 2d at 463 ("Courts often do not decide choice of law issues when performing a forum non conveniens analysis . . . ."). If the Court finds that it is likely that foreign law would be applied to the case, that factor weighs in favor of dismissal. See Blackrock, 2007 U.S. Dist. LEXIS 39279, at *32 ("The likelihood that the present forum would have to apply a foreign jurisdiction's law 'lends weight to the conclusion that the suit should be prosecuted in that jurisdiction.'" (citing Calavo Growers of Cal. V. Generali Belgium, 632 F.2d 963, 967 (2d Cir. 1980)); Gilstrap, 443 F. Supp. 2d at 491 (finding that likely application of English law weighs in favor of dismissal). Thus, the Court will consider, without deciding, whether there are likely to be problems of applying foreign law in this case.

It is well established that a federal court sitting in diversity jurisdiction applies the choice of law rules of the state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). In New York, the first step in determining which forum's law to apply is to determine if an actual conflict of law exists. Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998); In re Allstate Ins. Co. (Stolarz), 81 N.Y.2d 219, 613 N.E.2d 936, 937, 597 N.Y.S.2d 904 (N.Y. 1993) (Kaye,

C.J.).  If there is no conflict, New York law will govern the case.  Curley, 153 F.3d at 12.  If, however, there is an actual conflict, the Court must look to which jurisdiction has the greater interest in having its law applied to the dispute. Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 521-22, 644 N.E.2d 1001, 620 N.Y.S.2d 310 (1994).  In the context of a tort action, if the purpose of the law is to regulate conduct, which is true of the instant action, the law of the jurisdiction where the tort occurred will generally apply. Id.

Plaintiffs contend that there is no conflict between the applicable laws in Egypt and in New York.  Specifically, plaintiffs argue that Egyptian law does not conflict with New York's "innkeeper liability" laws (Pls.' Opp'n 24), and that Hilton's own expert explains that Egyptian law is virtually identical to U.S. law regarding liability and damages. (Pls.' Opp'n 19.)  Defendants do not specifically address whether or not there is a conflict between Egyptian and New York laws.

Plaintiffs rely upon an in limine determination in Guidi that under both New York and Egyptian law, an innkeeper is held to a standard of reasonableness, and therefore there was no conflict of law. Guidi v. Inter-Continental Hotels Corp., No. 95 Civ. 9006, 2003 U.S. Dist. LEXIS 6390, at *8 (S.D.N.Y. Apr. 15, 2003).  In that same decision, however, Judge Preska concluded that there was a conflict between the laws of Egypt and New York

on the issue of punitive damages, and that Egyptian law should apply because the conduct at issue took place primarily in Egypt. Id. at *9-10. Thus, even if plaintiffs' contentions are correct, this Court would likely apply Egyptian law to at least some of the issues in this case.

Because it appears that Egyptian law is likely to apply to at least some of the issues involved in this litigation, but possibly not to the entire dispute, this factor does not weigh heavily in favor of either party. See Strategic Value, 421 F. Supp. 2d at 775 (concluding that the choice of law factor did not weigh in favor of either party where plaintiff argued that there was no actual conflict between English and New York state law on contract formation, but the Court might be required to apply English law to resolve other issues in the case).

Overall, however, the public interest factors strongly favor dismissing this case because Egypt and Israel are two alternative fora with much more significant ties to the dispute.

Because plaintiffs' choice of forum is not entitled to substantial deference, two adequate alternative fora are better suited to resolve this dispute, and because both the private and public interest factors overwhelmingly support dismissal, this case should be dismissed based upon the doctrine of forum non conveniens. "The focus of any forum non conveniens inquiry, as the term itself suggests, is to ensure that the place where a

trial is held is convenient, that is, that the forum fits the needs and is suitable to the circumstances of the case." <u>Pollux</u>, 329 F.3d 64, 67.  Defendants have demonstrated that this forum is not convenient for either of the parties, and that this dispute is more appropriately adjudicated in either Egypt or Israel.

## CONCLUSION

For all the foregoing reasons, defendants' motion to dismiss is GRANTED without prejudice to the merits of plaintiffs' claims. This dismissal is conditioned upon defendants appearing and defending these allegations on the merits, without raising statute of limitations defenses. If defendants fail to comply with these conditions within sixty (60) days, plaintiffs can apply to restore the case to this Court's calendar.

SO ORDERED.

New York, New York
November  **10**  , 2008

_____
U.S.D.J.